IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE  DISTRICT OF ALABAMA
NORTHERN DIVISION

Jimmy Charles Jenkins,            )
                                  )
        Plaintiff,                )
                                  )
        vs.                       )        CASE NUMBER 2:06-CV-963-MEF
                                  )
THE CITY OF CLANTON ,             )
ALABAMA, et al.                   )
                                  )        JURY TRIAL DEMANDED
                                  )

## BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AND IN RESPONSE TO THE PLAINTIFF'S BRIEF IN OPPOSITION

Comes now the City of Clanton, Alabama, a municipal corporation, ("the City"), Chief

Henderson and Velma L. Tinsley to file their Brief in Support of the Motion to Dismiss the

Amended Complaint, and states as follows[1]:

### STATEMENT OF THE CASE

On or about October 25, 2006, the plaintiff Jimmy Charles Jenkins filed a Complaint

against the City of Clanton, Alabama and its unnamed agents.  The Complaint consists of

following four (4) counts: a state law claim for False Imprisonment (Count One), a claim for the

Deprivation of his Constitutional Rights pursuant to 42 U.S.C. §1983, Fifth, Eighth and

Fourteenth Amendments of the United States Constitution (Counts Two and Three) and a state

law claim for Conversion (Count IV).

On or about October 25, 2006, the City of Clanton filed its Motion to Dismiss.  Thereafter,

on or about November 20, 2006, the City filed a brief and evidentiary submissions in support its

---

[1] The City of Clanton has never employed a police officer by the name of J.D. Davis, as
the plaintiff's alleges in the Amended Complaint.  See Statement of City Clerk, **Exhibit 1** of the
Evidentiary Submissions.

contemporaneously filed Motion to Dismiss.

On or about December 19, 2006, the plaintiff filed a response in Opposition to the City's Motion to Dismiss his original Complaint.

On or about January 2, 2007, the City filed a response to the plaintiff's Opposition to the pending Motion to Dismiss the original Complaint.

On or about January 19, 2007, the plaintiff filed an Amended and Restated Complaint, naming the City of Clanton, J.D.Davis in his official capacity as a police officer for the City of Clanton, James Henderson, in his official capacity as the Chief of Police for the City of Clanton, and Velma L. Tinsley, as the Clerk of the Municipal Court of the City of Clanton, as defendants. The Amended Complaint consists of following five (5) counts: a state law claim for False Imprisonment (Count One), claims for the Deprivation of his Constitutional Rights pursuant to 42 U.S.C. §1983, Fifth, Eighth and Fourteenth Amendments of the United States Constitution (Counts Two and Three), a state law claim for Conversion (Count IV) and a state law claim for Negligence (Count V).

On or about January 23, 2007, the defendants filed their Motion to Dismiss the Amended Complaint.

On or about January 25, 2007, this Court ordered the plaintiff to show cause as to why the defendants' Motion to Dismiss should not be granted by February 5, 2007. Thereafter, the plaintiff filed a response adopting his previously filed Opposition to the City's Motion to Dismiss the original Complaint.

Although the plaintiff claims jurisdiction under Sections 1331 of Title 28 of the United States Code, for reasons shown below, the City disputes that this Court has jurisdiction over this

matter.  Furthermore, the plaintiff has failed to plead any jurisdictional basis for bringing his Alabama state law claims in Federal Court.

The City, Chief James Henderson and Velma Tinsley now file this Brief in support of their pending Motion to Dismiss the Amended Complaint.  From a prima facie reading of the Amended Complaint, these defendants are entitled to a judgment in their favor.  Therefore, the defendants' Motion to Dismiss is due to be granted.

**STATEMENT OF THE FACTS**

The City of Clanton, Chief James Henderson and Velma Tinsley, for purposes of this Motion to Dismiss, accept the facts as plead in the Amended Complaint.  However, these defendants do not waive their right to contest those facts nor should it be inferred that these defendants are in agreement therewith.

**ARGUMENT**

**I.     THE PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

Clearly, any of the plaintiff's negligence claims, claims based on the theory of *respondeat superior* and / or any of his 42 U.S.C. §1983 constitutional claims, which are based on events occurring before October of 2004 are barred by the applicable two years statute of limitations. See ALA. CODE § 6-2-38 (1975); see also Wallace v. Kato, 2007 WL 517122, *3 (Feb. 21, 2007) (recent U.S. Supreme Court decision holding that the length of the statute of limitations for a cause of action to be brought under 42 U.S.C. §1983 is the same as that which the state provides for personal-injury torts.)  Therefore, the defendants are not liable for any of the injuries or events that the plaintiff alleges occurred in 2003 on grounds of negligence, theory of *respondeat superior* and / constitutional grounds brought under 42 U.S.C. §1983.  See Am.Comp., p.p. 2-3, ¶¶ 7-16. Any such claims made by the plaintiff are due to be dismissed.

II.     **THE COMPLAINT FAILS TO STATE A CLAIM UNDER COUNTS TWO AND THREE UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO 42 U.S.C. § 1983.**

A.     **A MUNICIPALITY IS NOT LIABLE UNDER 42 U.S.C. § 1983 ON SIMPLE THEORY OF *RESPONDEAT SUPERIOR*.**

The plaintiff apparently seeks to hold the City liable merely because of the actions of some unnamed agents and/or employees of the City of Clanton, Alabama. See Amended Complaint, ¶¶ 26-31. Section 1983 claims cannot be pursued against a municipality under a theory of *respondeat superior*. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed 611 (1977). A municipality may not be held liable in a Section 1983 claim unless the plaintiff "identif[ies] a municipal 'policy' or 'custom' that caused the plaintiff's injury." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citing Monell, 436 U.S. 658, 98 S.Ct. 2018).

Only Counts Two and Three sound as federal causes of action. The Amended Complaint claims that the plaintiff was injured by the City and Chief Henderson due to their negligent hiring and supervision of Officer Davis. Thus, any federal claims against the City would lie under a *respondeat superior* theory. As previously stated, the City of Clanton has never employed a police officer by name of J.D. Davis. See Statement of City Clerk, **Exhibit 1** of the Evidentiary Submissions. Because the plaintiff has failed to identify a policy or custom of the City that led to an alleged violation of his rights, the claims against the City and the individual defendants in their official capacities are due to be dismissed.

B.     **PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE DUE TO BE DISMISSED.**

Every claim made against Chief Henderson and Velma Tinsley in the Amended Complaint are made against them in their official capacities only and, as such, they are due to be dismissed.  See Am.Comp.  Claims against the City's agents in their official capacity are tantamount to suing the City, qua City.  See Brandon v. Holt, 469 U.S. 464, 473, 105 S.Ct. 873, L.Ed.2d 878 (1985) (Suit against director in his official capacity was in effect suit against the city.); Busby v. Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (Section 1983 suits against municipal officers in their official capacity and direct suits against municipalities are functionally equivalent.); Holley v. City of Roanoke, Alabama, 162 F.Supp. 2d 1335 (M.D. Ala. 2001) (Section 1983 claims against city officials in their official capacity were "functionally equivalent" to claims against the city.").

The Eleventh Circuit Court of Appeals has specifically decided the question of whether a claim against a police chief and other police officers in their official capacity should be dismissed when the claim has also been made or could have been made against the municipality.  See Busby, 931 F.2d at 776.  In Busby v. Orlando, Busby sued the City of Orlando and several of its agents, including its police chief and police officers, in their individual and official capacities. See id. at 770.  The Eleventh Circuit recognized that

> [b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).

Id. at 776.  Therefore, the Eleventh Circuit held that the claims against the police chief and the police officers in their official capacity were properly disposed of by directed verdict.  Id.

5

In <u>Holley v. City of Roanoke, Alabama</u>, the mayor of Roanoke and several other municipal officials were sued under Section 1983 in both their individual and official capacities. <u>See</u> <u>Holley</u>, 162 F.Supp. at 1341 n.2.  In that case, the United States District Court for the Middle District of Alabama held that

> Claims against municipal officers in their official capacity are "functionally equivalent" to claims against the entity they represent. <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir.1991).  To retain this suit as one against Mayor Ziglar and the Council Defendants in their official capacity and also as one against the City of Roanoke would be "redundant and possibly confusing to the jury." <u>Id.</u>  The court, therefore, will dismiss the section 1983 discrimination claims against Mayor Ziglar and the Council Defendants in their official capacities.  <u>See id.</u> (affirming directed verdict as to official capacity defendants where city remained as defendant).

<u>Holley v. City of Roanoke, Alabama</u>, 162 F.Supp.2d 1335, 1341 n.2 (M.D. Ala. 2001).  Here, the case at hand presents the same concerns.  Therefore, the claims against Chief Henderson and Velma Tinsley are due to be dismissed.

## C.    CHIEF HENDERSON AND VELMA TINSLEY ARE ENTITLED TO QUALIFIED IMMUNITY.

The Amended Complaint does not state that the plaintiff is seeking damages against Chief Henderson and Velma Tinsley in their individual capacities, however, even if he were, Chief Henderson and Velma Tinsley are entitled qualified immunity.  Qualified immunity is an affirmative defense to a Section 1983 action against a government official sued in his or her individual capacity.  <u>See</u> <u>Wilson v. Strong</u>, 156 F.3d 1131, 1135 (11th Cir. 1998); <u>see also</u> <u>Hill v. Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1184 n.16 (11th Cir. 1994).  The test for whether a governmental defendant is entitled to qualified immunity involves a three-step analysis.

The first inquiry is to identify the specific constitutional right allegedly infringed. Section 1983 "is not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citation omitted). To "identify" the right at issue, means to "identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 842-843 n.5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), citing Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-1871, 104 L.Ed.2d 443 (1989). See also Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The plaintiff has completely failed to identify with particularity a specific "contour" of a constitutional right that was allegedly violated. See Am.Comp.

The second inquiry is to determine whether the claims of the plaintiff, if proven, actually establish a *violation* of the identified and specific constitutional right. See Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (Jun. 27, 2002). As argued herein, the plaintiff cannot prevail upon any of his claims. Furthermore, to the extent that probable cause is relied upon as a bar to the plaintiff's Section 1983 claims:

> To receive qualified immunity protection, "an officer need not have actual probable cause but only '***arguable probable cause***.'" Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997). Because only arguable probable cause is needed, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Id. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (internal quotation marks omitted).

Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003). See also Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir.1990) ("The existence of probable cause, however, is an absolute bar to

a section 1983 action for false arrest.").

If the second inquiry is resolved in the plaintiff's favor, then the third inquiry requires the Court to determine whether the constitutional right, asserted by the plaintiff to have been violated by the individual defendant, was "clearly established" in a particularized sense, and in the law, at the time the defendant acted. See Godby v. Montgomery Co. Bd. Of Educ., 996 F.Supp. 1390, 1400 (M.D. Ala. 1998) (citing Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994)). This is determined by reference to decisions of the Supreme Court of the United States and the Court of Appeals for the Eleventh Circuit. See D'Aguanno v. Gallagher, 50 F.3d 877, 881 n.6 (11th Cir. 1995). The relevant inquiry must demonstrate that the individual defendant had "fair warning" that his conduct was unconstitutional. Hope v. Pelzer, 122 S.Ct. at 2516.

> In Anderson, we explained that what "clearly established" means in this context depends largely "upon the level of generality at which the relevant 'legal rule' is to be identified." 483 U.S., at 639, 107 S.Ct. 3034. "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id., at 640, 107 S.Ct. 3034 (citations omitted); see also United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

Wilson v. Layne, 526 U.S. 603, 614-615, 119 S.Ct. 1692,1699 (U.S. 1999). A plaintiff bears the burden of demonstrating that the individual defendant violated clearly established law. See McMillian v. Johnson, 88 F.3d 1554, 1562 (11th Cir. 1996), modified by 101 F.3d 1363 (11th Cir. 1996). The plaintiff has failed to meet his burden. For these reasons, the claims against Chief Henderson and Velma Tinsley are due to be dismissed with prejudice.

**D.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983 UPON WHICH RELIEF CAN BE GRANTED IN THE FORM OF PUNITIVE DAMAGES.**

Although the plaintiff has claimed punitive damages, he cannot recover punitive damages for his Section 1983 claim from the City or from the individual defendants in their official capacities.  It is long-settled that a municipality cannot be held liable for punitive damages in a Section 1983 claim.  In City of Newport v. Fact Concerts, Inc., the United States Supreme Court held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983."  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762 (1981); see also City of Tarrant v. Jefferson, 682 So.2d 29, 30 (Ala. 1996) ("[F]ederal law prohibits a § 1983 award of punitive damages against a municipality . . .").  This rule also applies to municipal officials in their official capacities because those claims are tantamount to suing the City, *qua* City.  See Brandon v. Holt, 469 U.S. 464, 473, 105 S.Ct. 873, L.Ed.2d 878 (1985) (Suit against director in his official capacity was in effect suit against the city.); Busby v. Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (Section 1983 suits against municipal officers in their official capacity and direct suits against municipalities are functionally equivalent.); Holley v. Roanoke, 162 F.Supp. 2d 1335 (M.D. Ala. 2001) (Section 1983 claims against city officials in their official capacity were "functionally equivalent" to claims against the city.").  Because punitive damages against a municipality are not permitted in a Section 1983 claim, all claims for punitive damages against the City and the individual defendants in their official capacities arising under Section 1983 are due to be dismissed.

**III.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S ALABAMA STATE LAW CLAIMS.**

The plaintiff's Alabama state law claims should not be tried in this federal forum.

Supplemental jurisdiction over the plaintiff's Alabama state law claims is discretionary.  See 28

U.S.C. § 1367(c).  The Supreme Court of the United States has set forth the factors that a district

court should weigh when determining whether to exercise supplemental jurisdiction over state

law claims:

> [28 U.S.C. § 1367(c)] thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."

City of Chicago v. International College of Surgeons, 522 U.S. 156, 173, 118 S.Ct. 523, 534

(U.S. 1997).  The Eleventh Circuit Court of Appeals also instructs district courts to weigh "the

values of judicial economy, convenience, fairness, and comity," and has held that

> Both comity and economy are served when issues of state law are resolved by state courts. See id.

Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002).  Therefore, in the case at

hand, the Court has the opportunity to serve the interests of both comity and economy by

allowing Alabama's state courts to resolve the plaintiff's Alabama state law claims.

The plaintiff's state law claims substantially predominate over her federal claims.  When

a state law claim "substantially predominates over the claim or claims over which the district

court has original jurisdiction," it is within the inherent power of the Court to decline to exercise

supplemental jurisdiction.  28 U.S.C. § 1367(c)(2).  As shown above, the plaintiff's federal

claims are due to be dismissed.

10

In <u>Shotz v. City of Plantation, Fla.</u>, a municipal employee sued his employer under both federal and state law. <u>See</u> <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1165 (11th Cir. 2003). The federal claims and the state claims both related to the termination of the employee's employment. <u>See</u> <u>id.</u> The district court declined to exercise supplemental jurisdiction over the state law claims, and , on appeal, the Eleventh Circuit affirmed the district court's decision. <u>See</u> <u>id.</u> at 1185. One of the reasons cited for upholding the district court's decision was that there were four possible causes of action under state law and a "myriad" of applicable defenses. <u>Id.</u> Here, there are a greater number of possible state law causes of action brought by the plaintiff. Moreover, as shown in Part III, infra, there is no shortage of defenses applicable to the plaintiff's state law claims (even before examining evidentiary matters). Furthermore, the plaintiff's federal and state claims in this case are even more diverse than the ones examined in <u>Shotz</u>. Therefore, the posture of this case presents a more compelling procedural posture for the Court to decline to exercise supplemental jurisdiction than the one presented in <u>Shotz</u>.

There would be no resulting unfairness by making the plaintiff pursue his state law claims in state court. Discovery has not yet even been commenced.

As presented in Part I, supra, the plaintiff's federal claims (Counts Two and Three) are due to be dismissed. This presents an additional ground for the Court to decline to exercise supplemental jurisdiction over the plaintiff's Alabama state law claims. The Court is empowered to dismiss the plaintiff's Alabama state law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Therefore, in addition to

granting the defendants' Motion to Dismiss as to the plaintiff's federal claims, the Court should

also decline to exercise supplemental jurisdiction over the plaintiff's Alabama state law claims.[2]

## IV.    IN THE ALTERNATIVE, THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE LAWS OF THE STATE OF ALABAMA UPON WHICH RELIEF CAN BE GRANTED.

### A.    COUNTS ONE, FOUR AND FIVE DO NOT STRICTLY COMPLY WITH § 11-47-23 AND § 11-47-192 OF THE <u>CODE OF ALABAMA</u>.

Proper notice was not presented within the prescribed time limits to the City on the

plaintiff's claims arising under Alabama state law.  The requirements of Section 11-47-192 of the

<u>Code of Alabama</u> are quite clear that a plaintiff may not recover

> unless a sworn statement be filed with the clerk by the party injured
> . . . stating substantially the manner in which the injury was received,
> the day and time and the place where the accident occurred and the
> damages claimed.

ALA. CODE § 11-47-192 (1975).  The plaintiff did not provide Section 11-47-192 notice within

the required time period. Sections 11-47-23 and 11-47-192 are read together.  <u>See</u> <u>Poe v. Grove</u>

<u>Hill Memorial Hosp. Bd.</u>, 441 So.2d 861 (Ala. 1983).  Section 11-47-23 imposes a six month

statutory limit on the time in which a plaintiff has to give notice of his tort claims against a

municipality.  <u>See</u> ALA. CODE § 11-47-23 (1975).   The incident forming the basis of the

plaintiff's complaint occurred on or about January 20, 2003.  <u>See</u> Amended Complaint, p. 2, ¶ 7,

Doc.#15.   However, the plaintiff did not present a sworn notice of claim with the City Clerk

until February 3, 2006.  <u>See</u> Notice of Claim, **Exhibit 2** of the Evidentiary Submissions.

---

[2]When a district court declines to exercise supplemental jurisdiction, that decision will not be disturbed absent an abuse of discretion.  <u>See</u> <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1185 (11th Cir. 2003) ("We review a district court's decision to decline exercising supplemental jurisdiction for abuse of discretion.") (citing <u>Mergens v. Dreyfoos</u>, 166 F.3d 1114, 1119 (11th Cir. 1999)).

Therefore, the plaintiff did not give proper notice to the City within the six month statutory time limit.

It is true that, under certain circumstances, commencing a lawsuit against a city within six months can satisfy the statutory time limit. See Diemert v. Mobile, 474 So.2d 663 (Ala. 1985). The plaintiff, however, filed his Complaint with the United States District Court for the Middle District of Alabama more than six months after the conduct which is the subject of the present lawsuit allegedly occurred. Compare Amended Complaint, p. 2, ¶ 7 ("On or about January 20, 2003, . . ."), with Complaint, p. 1 (" 2006 OCT 25 / CLERK / U.S. DISTRICT COURT / MIDDLE DIST. OF ALA." (Capitalization in originals)). Therefore, the plaintiff failed to bring his lawsuit within six months of his alleged injuries accruing.

In his Opposition to the pending Motion to Dismiss the Amended Complaint, the plaintiff merely adopted his previously filed Opposition to the City's Motion to Dismiss the original Complaint. See Doc.# 21. In his Opposition to the City's Motion to Dismiss the original Complaint, the plaintiff states that his claims "stem from his unlawful imprisonment from February 28, 2005 through August 26, 2005" and, therefore, he filed his Notice of Claim within the statutory requirement. See Doc.#13, p.p. 5-6. However, the plaintiff was not imprisoned by or on behalf of the City of Clanton from February 28, 2005 through August 26, 2005. See Order of Commitment to Jail, dated March 8, 2005, **Exhibit 3** of Evidentiary Submissions. As of March 8, 2005, the plaintiff was incarcerated in the Chilton County Jail awaiting prosecution for a felony DUI in the Circuit Court of Chilton County. See Order of Commitment to Jail, dated March 8, 2005, **Exhibit 3** of Evidentiary Submissions. Even if the plaintiff did have any claims against the City that accrued on or after February 28, 2005, which he did not, there are certainly

13

no claims that accrued against the City after March 8, 2005 because on that date the plaintiff

began sitting days in Chilton County Jail for Chilton County and not the City of Clanton.  <u>See</u>

Order of Commitment to Jail, dated March 8, 2005, **Exhibit 3** of Evidentiary Submissions.

Therefore, the plaintiff still failed to file his Notice of Claim timely.

 The plaintiff has already failed to meet his burden as to whether he is allowed to pursue a

claim against the City under Alabama state law.  As the Supreme Court of Alabama has

explained

> It is also firmly established by the decisions of this court, as well as elsewhere, that the filing of the statement is not only mandatory but is a condition precedent to the bringing of an action against the municipal corporation for any cause to which they relate.  In order to maintain such action, the filing of the claim in substantial compliance with the statute ***must be averred in the complaint and proved***.

<u>Dixon v. City of Mobile</u>, 280 Ala. 419, 421, 194 So.2d 825, 826 (Ala. 1967) (quoting <u>City of

Birmingham v. Weston</u>, 233 Ala. 563, 172 So. 643 (Ala. 1937).  Specifically, the plaintiff has

failed to meet his most limited burden of pleading compliance with Alabama's notice statutes.

<u>See</u> Amended Complaint, Doc.#15.

 To provide effective notice under the <u>Code</u>, a plaintiff must meet the requirements of

Section 11-47-192 of the <u>Code of Alabama</u>.  In <u>City of Montgomery v. Weldon</u>, the injured party

sent a letter to city officials detailing his claim, but the injured party failed to swear to the claim.

<u>See</u> <u>City of Montgomery v. Weldon</u>, 195 So.2d 110 (Ala. 1967).  As a result, the Supreme Court

of Alabama held that the injured party had failed to satisfy the requirement of Section 11-47-192

that a statement be sworn and that the injured party could not recover.  <u>See</u> <u>id.</u>  In the present

case, the plaintiff failed to present a sworn statement within the statutory time limit.

14

The City cannot be held liable for the plaintiff's Alabama state law claims.  This Court is due to dismiss with prejudice all of the plaintiff's Alabama state law claims against the City.

**B.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR FALSE IMPRISONMENT (COUNT ONE) UPON WHICH RELIEF CAN BE GRANTED.**

**1.    A Municipality Cannot Be Held Liable for Intentional Torts.**

The Amended Complaint fails to state a claim for False Imprisonment upon which relief can be granted against the City.  Section 11-47-190 of the <u>Code of Alabama</u> provides that:

> no city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee . . . .

ALA. CODE § 11-47-190 (1975).  While this statute makes municipalities liable for the neglect, carelessness, or unskillfulness of its employees, it prevents cities from being held liable for intentional torts.  <u>See</u> <u>Brooks v. City of Birmingham</u>, 584 So. 2d 451 (Ala. 1991); <u>Hilliard v. City of Huntsville</u>, 585 So. 2d 889, 892 (Ala. 1991) (wantonness); <u>Altmayer v. City of Daphne</u>, 613 So.2d 366, 369 (Ala. 1993) (willfulness and recklessness).

As plead in the Amended Complaint, the Plaintiff's claim for False Imprisonment (Count One) is  for an intentional tort.  <u>See</u> Am.Comp., p.p. 4-5, ¶¶ 21-25, Doc.#15.  There is no language in the Amended Complaint that would indicate neglect, carelessness, or unskillfulness on the part of the defendants.  <u>See</u> Am.Comp., p.p. 4-5, ¶¶ 21-25, Doc.#15.

The federal courts of this State have specifically recognized that in Alabama municipalities are immune from the tort of False Imprisonment as they are plead here.  <u>See</u> <u>Beech v. City of Mobile</u>, 874 F.Supp. 1305, 1314 (S.D. Ala. 1994) (granting dispositive motion in favor

of the city on the plaintiff's Assault and Battery claim on the basis of Section 11-47-190); <u>Rose</u>

<u>v. Town of Jackson's Gap</u>, 952 F.Supp. 757, (M.D. Ala. 1996) (granting dispositive motion in

favor of the city on the plaintiff's False Imprisonment claim on the basis of Section 11-47-190).

This is particularly true because a municipality cannot act with malice.  <u>See</u> <u>Montgomery v. City</u>

<u>of Montgomery</u>, 732 So. 2d 305, 310 (Ala.Civ.App. 1999).  Because the plaintiff has alleged an

intentional tort, the City is immune from liability under Section 11-47-190 of the <u>Code of</u>

<u>Alabama</u>.  <u>See</u> <u>Brooks v. City of Birmingham</u>, 584 So. 2d 451 (Ala. 1991).

**2.    <u>There Was No False Imprisonment.</u>**

In Counts One (1) and  Five (5) of the Amended Complaint, the plaintiff claims that his

alleged injuries occurred due to his alleged wrongful and negligent imprisonment by the City and

its agents for six months.  <u>See</u> Am.Comp., p. 4, ¶¶ 22-24, p. 8, ¶¶ 37-38, Doc.#15.  However, the

plaintiff was not imprisoned by or on behalf of the City of Clanton for the alleged six (6) month

period, which he alleges to run from February 28, 2005 to August 28, 2005.  <u>See</u> Order of

Commitment to Jail, dated March 8, 2005, **Exhibit 3** of Evidentiary Submissions; <u>see</u> <u>also</u>

Am.Comp., p. 3, ¶¶ 17-18 and p. 4, ¶ 19, Doc.#15.  As of March 8, 2005, the plaintiff was

incarcerated in the Chilton County Jail awaiting prosecution for a felony DUI in the Circuit Court

of Chilton County.  <u>See</u> Order of Commitment to Jail, dated March 8, 2005, **Exhibit 3** of

Evidentiary Submissions.  Therefore, the plaintiff's claims for False Imprisonment against the

City, Chief Henderson and Velma Tinsely are due to be dismissed with prejudice.

**C.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
CONVERSION (COUNT FOUR) UPON WHICH RELIEF CAN BE
GRANTED.**

**1.    <u>A Municipality Cannot Be Held Liable for Intentional Torts.</u>**

The Amended Complaint fails to state a claim for Conversion upon which relief can be granted against the City. As previously argued in the aforementioned paragraph, the City cannot be held liable for intentional torts, pursuant to Section 11-47-190 of the Code of Alabama. See Section IV, B, 1 of this Brief; see also ALA. CODE § 11-47-190 (1975). Therefore, the plaintiff's claim for Conversion against the City is due to be dismissed with prejudice.

### 2. There Was No Conversion.

Furthermore, neither the City, Chief Henderson, Velma Tinsely, nor any of its other agents maliciously acquired possession of the plaintiff's personal property. See Affidavit of Chief Henderson, **Exhibit 4** of the Evidentiary Submissions. As required by the laws of the State of Alabama, the plaintiff was removed from his vehicle and said vehicle was impounded upon the plaintiff's arrest for driving while under the influence and with a revoked driver's license and at the direction of a law enforcement officer. See Affidavit of Chief Henderson, **Exhibit 4** of the Evidentiary Submissions; see also ALA. CODE § 32-6-19 (1975). Pursuant to the laws of the State of Alabama, the towing service, *not the City nor any of its agents*, took and maintained custody and control of the plaintiff's vehicle. See Affidavit of Chief Henderson, **Exhibit 4** of the Evidentiary Submissions; see also ALA. CODE § 32-6-19 (1975). In any event, the mere possession of property without some intentional or wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal use or misuse is not conversion. Wright v. Walker Co. Sheriff's Dept., 547 So.2d 452 (Ala.1989). Therefore, the plaintiff's claims for Conversion against the City, Chief Henderson and Velma Tinsely are due to be dismissed with prejudice.

**D.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENCE (COUNT FIVE) UPON WHICH RELIEF CAN BE GRANTED.**

**1.    Neither the City, Chief Henderson, Velma Tinsley, Nor Any of its Other Employees Were Parties to the Incident Made Basis for the Plaintiff's Negligence Claim.**

In Count Five (5) of the Amended Complaint, the plaintiff claims that his alleged injuries occurred due to his alleged wrongful and negligent imprisonment by the City and its agents for six months.  See Am.Comp., p. 4, ¶¶ 22-24, p. 8, ¶¶ 37-38, Doc.#15.  However, the plaintiff was not imprisoned by or on behalf of the City of Clanton for the alleged six (6) month period.  See Order of Commitment to Jail, dated March 8, 2005, **Exhibit 3** of Evidentiary Submissions.  As of March 8, 2005, the plaintiff was incarcerated in the Chilton County Jail awaiting prosecution for a felony DUI in the Circuit Court of Chilton County.  See Order of Commitment to Jail, dated March 8, 2005, **Exhibit 3** of  Evidentiary Submissions.   Since the plaintiff cannot state a claim for Negligence against Chief Henderson, Velma Tinsley, and / or any other City employee, pursuant to Section 11-47-190 of the Code of Alabama (1975) the plaintiff cannot state a claim for Negligence against the City.  See ALA. CODE § 11-47-190 (1975).  Therefore, the plaintiff's claims for Negligence against the City, Chief Henderson and Velma Tinsley are due to be dismissed with prejudice.

**2.    In Any Event, Chief Henderson and Velma Tinsley Have Discretionary Function Immunity from Any Negligence Claim the Plaintiff May Have and Their Immunity, in Turn, Immunizes the City**.

Municipal officials and employees performing discretionary functions that are executive and administrative in nature are entitled to immunity.  William v Crook, 741 So.2d 1074 (Ala. 1999); Phillips v. Thomas, 555 So.2d 81 (Ala. 1989); Point Prop., Inc.v. Anderson, et al., 584

So.2d 1332 (Ala. 1991); ALA. CODE § 6-5-338 (1975).  In <u>Moore v. Adams</u>, the Supreme Court

of Alabama defined "discretionary acts" as

> those acts as to which there is no hard and fast rule as to the course of
> conduct that one must or must not take, and those acts requiring
> exercise in judgment and choice and involving what is just and proper
> under the circumstances.

<u>Moore v. Adams</u>, 754 So.2d 630, 632 (Ala. 1999) (citing <u>Wright v. Wynn</u>, 682 So. 2d 1, 2 (Ala.

1996); <u>L.S.B. v. Howard</u>, 659 So.2d 43 (Ala. 1995)).  In <u>Ex parte Cranman</u>, 792 So.2d 392 (Ala.

2000), the Alabama Supreme Court restated the applicable factors concerning discretionary

function immunity and held that:

> A State agent *shall* be immune from civil liability in his or her personal
> capacity when the conduct made the basis of the claim against the agent is
> based upon the agent's
> (1) formulating plans, policies, or designs; or
> (2) exercising his or her judgment in the administration of a department
> or agency of government, including, but not limited to, examples such as:
> (a) making administrative adjudications;
> (b) allocating resources;
> (c) negotiating contracts;
> (d) hiring, firing, transferring, assigning, or supervising personnel; or
> (3) discharging duties imposed on a department or agency by statute, rule,
> or regulation, insofar as the statute, rule, or regulation prescribes the
> manner for performing the duties and the State agent performs the duties
> in that manner; or
> (4) exercising judgment in the enforcement of the criminal laws of the
> State, including, but not limited to, law-enforcement officers' arresting or
> attempting to arrest persons; or
> (5) exercising judgment in the discharge of duties imposed by statute,
> rule, or regulation in releasing prisoners, counseling or releasing persons
> of unsound mind, or educating students.

<u>Ex parte Cranman</u>, 792 So.2d 392, 405 (Ala. 2000).  The conduct described in the Amended

Complaint clearly fall within this definition and, therefore, Chief Henderson and Velma Tinsley

are entitled to discretionary function immunity.

Furthermore, in order for a municipal official or employee to be exempt from discretionary function immunity, they must act fraudulently, willfully, maliciously, or in bad faith.  See Ryan v. Hayes, 831 So.2d 21 (Ala. 2002).  The plaintiffs have not made any claims that either Chief Henderson or Velma Tinsley acted fraudulently, willfully, maliciously, or in bad faith as to deprive them of their entitlement to discretionary function immunity.  Id.; see Am.Comp.  Their immunity, in turn, immunizes the City as well.  See Howard v. City of Atmore, et al., 887 So.2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune."); see also ALA. CODE § 11-47-190 (1975)..  Therefore, the plaintiff's claims for Negligence against the City, Chief Henderson and Velma Tinsley are due to be dismissed with prejudice.

> **3.    Furthermore, as the Clerk of the City's Municipal Court, Velma Tinsley Has Judicial Immunity from Any Negligence Claim the Plaintiff May Have and Her Immunity, in Turn, Immunizes the City.**

Clerks of municipal courts "are afforded judicial immunity for their 'discretionary acts.'" Ex parte City of Tuskegee, et al., 932 So.2d 895, 908-10 (Ala. 2005) (quoting City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1133 (Ala. 2000) (citing Almon v. Gibbs, 545 So.2d 18, 20 (Ala. 1989))).  A municipal court clerk's determination in whether to issue a warrant is a discretionary act entitling her to judicial immunity.  Ex parte City of Tuskegee, et al., 932 So.2d at 910 (Ala. 2005) (citing Almon v. Gibbs, 545 So.2d 18, 20 (Ala. 1989)).  Therefore, Velma Tinsley is entitled to judicial immunity and her immunity, in turn, immunizes the City.  See ALA. CODE § 11-47-190 (1975).

> **E.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER ALABAMA LAW UPON WHICH RELIEF CAN BE GRANTED IN THE FORM OF PUNITIVE DAMAGES.**

The City and Chief Henderson and Velma Tinsley, in their official capacities are immune from punitive damages arising out of state law claims.  Section 6-11-26 of the <u>Code of Alabama</u> prohibits the award of punitive damages against any Alabama municipality.

> Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et seq., or any acts amendatory thereto.

ALA. CODE § 6-11-26 (1975).  This rule also applies to municipal officials in their official capacities because those claims are tantamount to suing the City, *qua* City.  <u>See</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 473, 105 S.Ct. 873, L.Ed.2d 878 (1985) (Suit against director in his official capacity was in effect suit against the city.); <u>Busby v. Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991) (Section 1983 suits against municipal officers in their official capacity and direct suits against municipalities are functionally equivalent.); <u>Holley v. Roanoke</u>, 162 F.Supp. 2d 1335 (M.D. Ala. 2001) (Section 1983 claims against city officials in their official capacity were "functionally equivalent" to claims against the city.").  Despite the fact that this statute has been in effect for over fifteen years, see Acts 1987, No. 87-185, p. 251, § 7, the text of this statute is so plain on its face that no exceptions to this rule, as it applies to municipalities, have ever been carved.

## CONCLUSION

From a prima facie reading of the Amended Complaint, the plaintiff has failed to state a claim against the City, Chief Henderson, or Velma Tinsley under federal law for which relief can be granted and, therefore, they are entitled to a judgment as a matter of law on the plaintiff's federal claims.

The defendants petition the Court not to exercise supplemental jurisdiction over the plaintiff's Alabama state law claims. The state law claims predominate over the federal claims, and this is particularly true since the plaintiff's federal claims are due to be dismissed.

In the alternative, should the Court decide to exercise supplemental jurisdiction over the plaintiff's Alabama state law claims, the defendants move for the dismissal of those Counts as well. Even if the plaintiff is allowed to raise those claims in this forum, he has failed to state a claim under Alabama state law for which relief may be granted.

As a matter of law, there are no grounds permitting the plaintiff recovery. The defendants' Motion to Dismiss the Amended Complaint is due to be granted in their favor.


　/s/ James W. Porter II　　　　　　　
James W. Porter II, one of the
Attorneys for Defendant, The City of Clanton,
Alabama
State Bar ID ASB 3314 T79J
State Code POR001


　　　　　　　　　　　　　　　　　　　/s/ Natalie A. Daugherty　　　　　　　
Natalie A. Daugherty, one of the
Attorneys for Defendant, The City of Clanton,
Alabama
State Bar ID ASB 6494 A55D
State Code DAU007


OF COUNSEL:
PORTER, PORTER & HASSINGER, P.C.
P.O. Box 128
Birmingham, Alabama  35201-0128
(205) 322-1744
Fax: (205) 322-1750

<u>                         *CERTIFICATE OF SERVICE*                         </u>

  I hereby certify that a copy of the above and foregoing has been ***electronically filed*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon the following, this the <u>  26 day of February, 2007  </u>.  If Notice of Electronic Filing indicates that Notice needs to be delivered by other means to any of the following, I certify that a copy will be sent via U.S. Mail, properly addressed, postage prepaid.

S. Joshua Briskman, Esq.
Baxley, Dillard, Dauphin,
 McKnight & Barclift
2008 Third Avenue South
Birmingham, AL 35233

<u>                                        /s/ James W. Porter II                       </u>
         OF COUNSEL